1

2

3

4

5

6

7

8

9          **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  JAMES REINHOLTZ, | CASE NO. 09-CV-0166 MMA (LSP) |
| 13                              Plaintiff, | **TEMPORARY RESTRAINING** |
| 14        vs. | **ORDER** |
| 15  SELECT PORTOFOLIO SERVICING; | [Doc. No. 4] |
|     WELLS FARGO BANK, N.A., as the | |
| 16  successor in interest of the loan originated by | |
|     FIRST FRANKLIN, A Division of National | |
| 17  City Bank; FIRST AMERICAN | |
|     LOANSTAR TRUSTEE SERVICES; and | |
| 18  DOES 1 to 10, inclusive, | |
|                              Defendant. | |

19

20         Pending before the Court is Plaintiff's ex parte motion for temporary restraining order.

21    [Doc. No. 4].

22                                              **Background**

23         In 2004, Plaintiff purchased his home on Geiger Court, in Chula Vista, Calif. The lender at

24    the time was Downey Savings and Loan Association. *Ex Parte Mot. for TRO* [Doc. No. 4] at

25    4:6–13. In 2005, he refinanced his loan through Guaranty Bank, and got a loan in the sum of

26    $805,000, and a revolving line of credit secured with the house from National City Bank, in the

27    sum of $200,000. *Id.* In August of 2006, Plaintiff refinanced the loan on his house through First

28    Franklin Bank, and was approved for a loan in the sum of $1,024,000. *Id.* At some point,

      Defendant SPS became the loan servicer. *Id.* at 2:14–17. Plaintiff discovered in December 2008,

1   that First Franklin had either transferred or sold its interest in the loan to Wells Fargo Bank. *Id.* at

2   4:25–5:7. Plaintiff defaulted on the loan in mid-2008 and was served notice of default. *Compl.*

3   [Doc. No. 1] at 5:14–20. In December 2008, Plaintiff arranged for a short-sale, in which the third-

4   party buyer offered to pay $460,000 for the property. Wells Fargo, however, informed Plaintiff

5   that it would not accept a short sale for less than $540,000. *Ex Parte Mot. for TRO* at 4:25–5:18.

6       On January 15, 2009, Plaintiff attempted to enter into a modification of the subject loan

7   with SPS as Wells Fargo's representative, but SPS refused to consider a loan modification. *Id.* at

8   5:20–27. On January 16, 2009, Plaintiff received a letter from SPS indicating that it would be

9   willing to accept $486,000 in lieu of the $1,060,050.64 owed to release "its" lien on the property.

10  *Ex. B to Ex Parte Mot. for TRO* [Doc. No. 4] at 24. Plaintiff was unable to pay the amount set forth

11  in the letter. Defendants have set a Trustee's sale for February 5, 2009, at 10 a.m. to foreclose on

12  Plaintiff's home. *Ex. A to Ex Parte Mot. for TRO* [Doc. No. 4] at 23.

13      On January 28, 2009, Plaintiff filed a complaint alleging various violations under the

14  Truth-In-Lending Act 15 U.S.C. § 1601, et seq., California's Business and Professions Code §

15  17200, et seq., and 12 U.S.C. § 2605, et seq. [Doc. No. 1]. Plaintiff also seeks relief for Fraudulent

16  Omission and to Quiet Title. *Id.*

17      On February 3, 2009, Plaintiff filed its Ex Parte Motion for Temporary Restraining Order

18  ("TRO"). [Doc. No. 4]. In the application, Plaintiff seeks to enjoin Defendants from foreclosing on

19  his house, to compel production of various documents, and to compel Defendants to show cause

20  why a preliminary injunction should not be granted in favor of Plaintiff, enjoining foreclosure or

21  sale of Plaintiff's property during the pendency of this lawsuit. *Ex Parte Mot. for TRO* at 2:5–22.

22      On February 4, 2009 at 3:30 p.m., the Court held a hearing on Plaintiff's Ex Parte Motion

23  for TRO.

## **Standard of Review**

25      Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a TRO

26  without notice to the adverse party where "specific facts in an affidavit or a verified complaint

27  clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . . ."

28  FED. R. CIV. P. 65(b)(1)(A).  The movant must also certify in writing any efforts made to give

1  notice and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1)(B). Although the

2  restrictions imposed are stringent, these restrictions "reflect the fact that our entire jurisprudence

3  runs counter to the notion of court action taken before reasonable notice and an opportunity to be

4  heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters &*

5  *Auto Truck Drivers*, 415 U.S. 423, 438–39 (1974).

6       The standard for issuing a TRO is similar to the standard for issuing a preliminary

7  injunction and requires that the party seeking relief show either "(1) a combination of likelihood of

8  success on the merits and the possibility of irreparable harm, or (2) that serious questions going to

9  the merits are raised and the balance of hardships tips sharply in favor of the moving party."

10  *Homeowners Against the Unfair Initiative v. Calif. Building Industry Assoc.*, Civil No. 06CV152

11  JAH (WMc), 2006 U.S. Dist. LEXIS 97023, *4 (S.D. Cal. Jan. 26, 2006) (citing *Immigrant*

12  *Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)).

13  "[T]hese two formulations represent two points on a sliding scale in which the required degree of

14  irreparable harm increases as the probability of success decreases." *Dep't Parks & Rec. of Calif.*

15  *v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted).  The

16  underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a

17  preliminary injunction hearing may be held.  *Granny Goose Foods*, 415 U.S. at 439 (1974); *see*

18  *also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006).

19                                        **Analysis**

20       The Truth-In-Lending Act ("TILA"), which is contained in Title I of the Consumer Credit

21  Protection Act, as amended (15 U.S.C. § 1601, et seq.), is intended to assure a meaningful

22  disclosure of credit terms so that consumers can compare more readily various available terms and

23  avoid the uninformed use of credit. 15 U.S.C. § 1601(a). TILA requires that creditors disclose to

24  borrowers specific information, including finance charges, annual percentage rate, and the right to

25  rescind a transaction. *See*, *e.g.*, 15 U.S.C. §§ 1635, 1638. Regulation Z, 12 C.F.R. Part 226, is

26  issued by the Board of Governors of the Federal Reserve System to implement TILA. *See* 12

27  C.F.R. § 226.1(a).

28       **1. Notice**

1   Plaintiff provides an affidavit by his attorney, in which the attorney demonstrates the

2   attempts to give notice to Defendants via fax. Plaintiff has provided fax cover sheets in support of

3   the notice requirement. The Court finds that Plaintiff has sufficiently demonstrated the actions

4   taken to serve Defendants with notice of his application for TRO.

5   **2. Irreparable Harm**

6   Plaintiff is set to lose his home tomorrow at a foreclosure sale. Plaintiff contends that he

7   will suffer irreparable harm because his residence is his primary residence. Plaintiff asserts that he

8   has lived in the house for almost five years, during which time it has become a home rather than

9   "just another piece of property." Plaintiff contends that if his home is sold at a foreclosure sale, he

10   will be homeless, a prospect for which he is not prepared. *Ex Parte Mot. for TRO* at 7:2–22.

11   In addition, the Court is satisfied that Plaintiff has sought relief in the form of a TRO in a diligent

12   manner. Plaintiff was notified of the foreclosure sale on January 7, 2009. Plaintiff subsequently

13   contacted SPS to see if he could modify the loan. SPS declined, but then sent Plaintiff a letter on

14   January 16, 2009, stating that it would accept payment of $486,000.00 in satisfaction of the loan if

15   paid by January 30, 2009. On January 28, 2009, when it became apparent that Plaintiff could not

16   come up with the funds and the parties could not negotiate any other remedies, Plaintiff filed the

17   complaint. On February 3, 2009, Plaintiff filed the ex parte application for a TRO .

18   Plaintiff has demonstrated a showing of irreparable harm, that is strong–-for Plaintiff to

19   lose his house tomorrow would present a far greater hardship than postponing the foreclosure sale

20   for a ten-day period to allow for an additional hearing and further briefing (especially since the

21   Defendants have not had an opportunity to oppose Plaintiff's application in writing or otherwise).

22   **2. Likelihood of Success on the Merits**

23   Because the balance of hardships so clearly points in Plaintiff's direction, Plaintiff is

24   allowed to make a lesser showing on the merits. *See Johnson v. Cal. State Bd. of Accountancy*, 72

25   F.3d 1427, 1430 (9th Cir. 1995) (holding that where balance of hardships tips sharply in plaintiff's

26   favor, plaintiff need only show "fair chance of success on the merits"). Plaintiff contends that he

27   has demonstrated violations of TILA and other various provisions for which he seeks relief, which

28   shows a likelihood of success on the merits. Plaintiff has alleged facts in the verified complaint

1  and the Ex Parte Motion for TRO that show a "fair chance of success on the merits" because

2  Plaintiff's facts tend to show that Defendants committed various TILA violations, entitling him to

3  rescission. There are serious questions, however, concerning whether Plaintiff's claims regarding

4  Defendants standing under the "original title" theory have any merit based on recent cases dealing

5  with this issue. For the time being, however, the Court finds that Plaintiff's allegations on the

6  merits are sufficient to grant the temporary restraining order.

7      Having balanced the hardships with the likelihood of success on the merits, the Court finds

8  that the inquiry tips in favor of Plaintiff. Accordingly, Plaintiff's Ex Parte Motion for TRO is

9  hereby **GRANTED**.[1]

10  **3. Bond Requirement**

11     Rule 65(c) states: "The Court may issue a preliminary injunction or a temporary restraining

12  order only if the movant gives security in an amount that the court considers proper to pay the

13  costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

14  Fed. R. Civ. P. 65(c). Here, Plaintiff asserts that a bond should not be required because

15  "defendants are protected by the security interest they hold on plaintiff's home."  Plaintiff,

16  however, has failed to demonstrate that there is equity sufficient to pay the costs and damages if

17  the TRO is ultimately found to be improper. Accordingly, the Court requires that Plaintiff post a

18  cash bond of **$5,000.00**. This Order shall not become effective until the bond is paid in accordance

19  with Southern District of California Local Civil Rule 65.1.2.

20     In conclusion, the Court hereby **ORDERS**:

21     (1) All Defendants and their agents, assigns, employees, officers, attorneys, and

22  representatives are enjoined and restrained from engaging in or performing any act to deprive

23  Plaintiff of ownership or possession of the real property located at 2671 Geiger Creek Court,

24  Chula Vista, California 91915 ("Property"), including but not limited to instituting, prosecuting or

25  maintaining foreclosure or sale proceedings on the Property, from recording any deeds or

26

27      [1]The Court, however, does not find good cause to order production of the documents listed in page 2 of Plaintiff's motion for TRO. To the extent Plaintiff continues to seek these documents, the

28  Court finds that an order compelling such production is not appropriate at this point in the proceedings.

1  mortgages regarding the Property or from otherwise taking any steps whatsoever to deprive

2  Plaintiff of ownership in the Property, and in particular from proceeding with the sale of the

3  Property scheduled for February 5, 2009.

4          (2) This temporary restraining order shall be binding upon the parties to this action and all

5  other persons or entities who receive actual notice of this order by personal service or other

6  acceptable means of service.

7          (3) With respect to all Defendants, Plaintiffs shall serve all Defendants with a copy of this

8  Order no later than *February 9, 2009*, together with all other documentation filed with the Court in

9  this action.

10          (4) This temporary restraining order is entered this 4th day of February, 2009 at 6:15 p.m.

11          (5) A hearing on Plaintiff's motion for preliminary injunction is set for *February 19, 2009*

12  at **10 a.m.** in Courtroom 5.

13          (6) By *February 13, 2009*, Defendants shall submit brief(s)[2] in opposition to the

14  preliminary injunction. Any brief **SHALL NOT EXCEED** twenty-five (25) pages.

15          (7) By *February 17, 2009*, Plaintiff shall submit a reply to the opposition, if any, and it

16  **SHALL NOT EXCEED** ten (10) pages.

17          **IT IS SO ORDERED**.

18  DATED:  February 4, 2009

19                                                   Michael M. Anello

20                                                   Hon. Michael M. Anello
                                                     United States District Judge

21

22

23

24

25

26

27

28          [2]Defendants may jointly submit one brief on behalf of all Defendants, or three separate briefs
    on behalf of each Defendant.